UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TERRANCE JOHNSON, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 4:13 CV 2186 ERW(ACL) |
| ) | |
| TROY STEELE,[1] ) | |
| ) | |
| Respondent. ) | |

# REPORT AND RECOMMENDATION
# OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court on the Petition of Terrance Johnson for a Writ of Habeas Corpus under 28 U.S.C. § 2254. This cause was referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 (b).

## I. Procedural History

Johnson is incarcerated at the Eastern Reception, Diagnostic and Correctional Center in Bonne Terre, Missouri, pursuant to the Sentence and Judgment of the Circuit Court of St. Louis County, Missouri. (Respt's Ex. B at 118-22.)

On March 9, 2010, a jury found Johnson guilty of two counts of robbery in the first degree, one count of assault in the first degree, and three counts of armed criminal action. (Respt's Ex. A at 389.) The court sentenced Johnson to ten years for each of the robbery counts, ten years for the assault count, and three years for each of the armed criminal action counts. (Respt's Ex. B at 118-22.) The court ordered that the two robbery counts were to be served consecutively, with the

---

[1]Petitioner has been transferred from Southeast Correctional Center to the Eastern Reception, Diagnostic and Correctional Center ("ERDCC") in Bonne Terre, Missouri. Troy Steele, Warden of ERDCC, is Petitioner's current custodian. Troy Steele is therefore substituted as the party respondent. *See* Rule 2(a), Rules Governing Section 2254 Cases in the United States District Courts ("…the petition must name as respondent the state officer who has custody").

1

remaining four counts running concurrent with the two robbery counts, for a total of twenty years imprisonment. *Id.*

Johnson raised the following claims on direct appeal of his convictions: (1) the trial court erred in failing to grant Johnson's motion to strike venireman Robert English for cause; (2) the trial court erred in overruling Johnson's motion to suppress statements; (3) and the trial court erred in allowing Detective Kyle Lewis to testify, over Johnson's objection, to out of court statements of unidentified witnesses. (Respt's Ex. C.) On June 7, 2011, the Missouri Court of Appeals affirmed Johnson's convictions. (Respt's Ex. E.)

Johnson filed a *pro se* motion for post-conviction relief under Rule 29.15. (Respt's Ex. F at 3-18.) Johnson argued that he received ineffective assistance of counsel when trial counsel provided incorrect information regarding accomplice liability law, upon which he relied when rejecting the state's offer of ten years. *Id.* Johnson also claimed that counsel provided ineffective assistance in failing to investigate the fact that the consent to search form was signed and a confession was obtained under duress. *Id.* After appointment of counsel, an amended post-conviction relief motion and request for evidentiary hearing was filed. *Id.* at 24-56. The amended motion incorporated the *pro se* claims and alleged the following additional ineffective assistance of counsel claims: (1) trial counsel unreasonably assured Johnson that she would win his case at trial in connection with advising him about a pre-trial plea offer of eight years in the Missouri Department of Corrections; (2) trial counsel failed to impeach state witness Eric Benford with inconsistent deposition testimony; and (3) trial counsel failed to investigate, endorse, subpoena, and call witnesses who would have supported Johnson's case. *Id.* The motion court denied Johnson's amended motion and his request for an evidentiary hearing. *Id.* at 59-66.

In his sole point on appeal from the denial of post-conviction relief, Johnson argued that trial counsel was ineffective in misinforming him about accomplice liability and that, but for

2

counsel's misinformation, he would have accepted the state's pretrial plea offer of ten years. (Respt's Ex. G.) The Missouri Court of Appeals affirmed the decision of the motion court. (Respt's Ex. I.)

Johnson filed the instant Petition on October 28, 2013. (Doc. 1.) In the section titled "Ground One", Johnson states "See Attachment." (Doc. 1 at 5.) The attachment consists of the opinion of the motion court denying Johnson's post-conviction relief motion, and the opinion of the Missouri Court of Appeals affirming the denial of post-conviction relief. (Doc. 1-1.)

On January 27, 2014, Respondent filed a Response to Order to Show Cause. (Doc. 10-1.) Respondent states that he assumes Johnson intends to raise the sole exhausted claim referenced in the state court rulings he attached to his Petition—that trial counsel was ineffective in misadvising him about accomplice liability. Respondent argues that the Court should dismiss the Petition because the pleadings are inadequate. Respondent further contends that Johnson's only exhausted claim fails on its merits. Respondent argues that, to the extent Johnson intends to raise any other claims, he failed to properly exhaust his state remedies.

Johnson has filed a Traverse, in which he states that his sole ground for relief is that trial counsel was ineffective in misinforming him regarding the essential elements of the crimes. (Doc. 13.)

## II. Facts

Johnson was convicted of two burglary counts, three armed criminal action counts, and an assault count. Each count was premised on an accomplice liability theory. Specifically, it was alleged that Johnson acted with his brother and his brother's friend.

The first event occurred on July 23, 2008—the robbery of Rigoverto Ascencio. Ascencio testified that he was walking to meet a friend at approximately 11:20 p.m., when Carlos Jackson—Johnson's brother—robbed him. (Respt's Ex. A at 180-81.) Ascencio was only

carrying an mp3 player, so Jackson took the mp3 player. *Id.* at 181-82. Ascencio testified that Jackson then ran around the corner and got into a car. *Id.* at 182-83.

The second event—the robbery and assault of Carlee Garofalo—occurred on the same night, less than thirty minutes after the robbery of Ascencio. Garofalo testified that she was walking to her home with Nicole Dachroeden when a car pulled in front of them. *Id.* at 192-94. Garofalo stated that two individuals—one of whom was Jackson—exited the car and walked towards them. *Id.* at 194. She testified that Jackson grabbed for her purse, which contained an iPod. *Id.* Garofalo told Dachroeden to run, and Dachroeden fled. *Id.* Garofalo and Jackson struggled over the purse, and Jackson pulled out a gun. *Id.* at 195-96. Garofalo testified that she threw her purse at Jackson, after which Jackson shot her in the chest. *Id.* at 196-97. Jackson then fled the scene. *Id.* at 198. Garofalo testified that Jackson's companion did not participate in the struggle. *Id.* at 194-95. She further testified that she did not see the driver of the car after she was shot because she fell to the ground. *Id.* at 206. The bullet struck several organs, including Garofalo's lung, kidney, and pancreas. *Id.* at 199. Garofalo lost one of her kidneys, had to stay in the hospital for approximately one month after the shooting, and had to return to the hospital approximately once a week for recurring problems with her pancreas for several months. *Id.* at 199-200.

The police investigation led Officer Michael Arthur to stop a car matching the description of the car seen on footage from red light cameras near the scenes of the robbery. *Id.* at 226-33. At the time the car was stopped, Johnson was driving the car, which was registered to Donninnique Murray. *Id.* at 234. Johnson was arrested on outstanding traffic warrants. *Id.*

Detective Shawn Reiland interviewed Johnson while he was in custody, after Reiland advised Johnson of his *Miranda* rights and Johnson signed a waiver of rights form. *Id.* at 243-44. Reiland testified that Johnson told him that he was with his brother, Carlos Jackson, at the home of

4

Johnson's girlfriend, Donninique Murray, on the day the crimes occurred. *Id.* at 247. Johnson stated that Murray was upset because she found a pistol in her home where her child lived, so she hid the gun, and told Johnson and Jackson to leave. *Id.* Jackson found the gun and then left with Johnson in Murray's car. *Id.* at 248.

Johnson stated that, as they were driving to a friend's house (Eric Benford), Jackson saw Ascencio walking on the street and said he was going to rob him. *Id.* Johnson told Jackson that, if he used the gun, he needed to leave it at Benford's house. *Id.* Johnson let Jackson out of the car, and Jackson robbed Ascencio. *Id.* at 249. Jackson got back in the car and showed Johnson the iPod. *Id.* Johnson then drove to Benford's house. *Id.*

When they arrived at Benford's residence, Jackson went inside while Johnson waited in the car. *Id.* A short time later, Benford and Jackson got in the car. *Id.* at 249-50. While Johnson was driving, Benford saw Garofalo and Dachroeden and suggested that they "strong-arm" the girls. *Id.* at 250. Johnson and Jackson agreed. *Id.* Jackson and Benford then got out of the car. *Id.* Johnson stated that he did not see what happened next, but he heard a gunshot. *Id.* at 250-51. Johnson picked up Jackson and Benford, and asked them what happened. *Id.* at 251. Jackson told Johnson that they took an iPod, three dollars, and a condom. *Id.* Johnson stated that the iPod was in his possession. *Id.* at 255.

After Johnson made his oral statement to Detective Reiland, he was given the opportunity to make a written statement. *Id.* at 252. In his written statement, Johnson admitted to being the driver for both robberies, but denied knowing that a gun would be used in either robbery. *Id.* at 254.

Johnson and Murray consented to a search of their apartment. *Id.* at 255-57. Law enforcement found Garofalo's iPod in the apartment. *Id.* at 257.

5

At trial, Benford testified that Johnson and Jackson picked him up in a car driven by Johnson on the night of the crimes. *Id.* at 276-77. Benford stated that he saw Garofalo and Dachroeden walking, and someone suggested trying to rob them. *Id.* at 278-79. Benford testified that he and Jackson got out of the car and approached the girls. *Id.* at 279. Benford just stood and watched as Jackson and Garofalo struggled over the purse, and Jackson shot Garofalo. *Id.* at 279-80. Johnson then drove Benford and Jackson away from the crime scene. *Id.* at 281. As Johnson was driving, Benford, Jackson, and Johnson discussed what had just occurred. *Id.* at 282-84.

Johnson testified at trial that, when he was driving with Jackson, Jackson told him that Asencio was a friend and asked Johnson to stop so he could talk to Asencio. (Respt's Ex. A at 304.) Johnson denied having any knowledge that Jackson planned to rob Asencio, or that he did rob Asencio after he got back in the car. *Id.* Johnson testified that, when the three men saw Garofalo and Dachroeden, Benford first suggested robbing them, but Jackson then suggested just getting their phone numbers. *Id.* at 306. Johnson stated that he thought Benson and Jackson were getting the girls' numbers when he let them out of the car. *Id.* He testified that he heard the gun shot, but claimed that it sounded like it was coming from far away. *Id.* at 308. Johnson stated that he first learned Jackson had robbed and shot Garofalo several minutes after he had driven away from the scene with Benson and Jackson. *Id.* at 309. Johnson testified that he "snap[ped]" when he learned his brother had shot Garofalo, and told Jackson he never wanted to see him again. *Id.* at 310.

Johnson stated that he thought the iPod that was recovered from his residence belonged to his niece when he found it in the car. *Id.* at 311. Johnson testified that his written statement that was introduced at trial was the third statement he provided to police. *Id.* at 312. He stated that

6

the police tore up his previous two statements. *Id.* Johnson testified that he had no idea Jackson planned to rob Asencio or that Jackson and Benson planned to rob Garofalo. *Id.* at 313.

At sentencing, when asked if there was anything he wanted counsel to do that she did not do, Johnson replied: "No." (Respt's Ex. A at 396.) Johnson made no allegations that counsel made any guarantees that he would win at trial or that she advised him to turn down a plea offer. *Id.*

### III. Standard of Review

A federal court's power to grant a writ of habeas corpus is governed by 28 U.S.C. § 2254(d), which provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court construed Section 2254(d) in *Williams v. Taylor*, 529 U.S. 362 (2000). With respect to the "contrary to" language, a majority of the Court held that a state court decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or if the state court "decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Id.* at 405. Under the "unreasonable application" prong of § 2254(d)(1), a writ may issue if "the state court identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably

7

applies [the principle] to the facts of the particular state prisoner's case." *Id.* Thus, "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 410. Although the Court failed to specifically define "objectively unreasonable," it observed that "an unreasonable application of federal law is different from an incorrect application of federal law." *Id.* at 410.

### IV. Johnson's Claim

As an initial matter, Respondent argues that the Court should dismiss the Petition because Johnson has failed to sufficiently plead his claims. Respondent accurately notes that the petition must state specific, particularized facts which permit this Court to determine from the face of the petition whether it merits further review. *Adams v. Armontrout*, 897 F.2d 332, 334 (8th Cir. 1990). Although Johnson simply attached the state post-conviction proceedings to his Petition, he clarifies in his Traverse that his sole ground for relief is the only claim he properly exhausted in state court: that trial counsel misinformed him regarding the law on accomplice liability and that, but for this misinformation, he would have accepted a ten-year offer. The Court will, therefore, consider the merits of Johnson's claim.

In order to state a claim of ineffective assistance of trial counsel, Johnson must meet the *Strickland* standard: he must demonstrate that his counsel's performance was deficient and that he was prejudiced by that performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficient representation means counsel's conduct fell below the conduct of a reasonably competent attorney. *Id.* To establish prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Federal habeas review of a *Strickland* claim is highly deferential, because "[t]he question is not whether a federal court believes the state court's determination

under the *Strickland* standard was incorrect but whether the determination was unreasonable — a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 113 (2009) (internal quotations and citations omitted).

A defendant may reject a plea bargain, and after receiving a fair trial, may still show prejudice if the plea bargain would have resulted in a shorter sentence, but the defendant must show but for his counsel's advice he or she would have accepted the plea. *Engelen v. United States*, 68 F.3d 238, 241 (8th Cir. 1995). "A claim of ineffective assistance of counsel cannot be based on decisions that relate to a reasoned choice of trial strategy, even when it later may be shown to be improvident." *Sherron v. Norris*, 69 F.3d 285, 290 (8th Cir. 1995), citing *Hayes v. Lockhart*, 766 F.2d 1247, 1251 (8th Cir. 1985).

The Missouri Court of Appeals held that the record demonstrates that trial counsel understood the law on accomplice liability. (Respt's Ex. I at 4.) The court noted that counsel addressed the issue of accomplice liability in her voir dire of the venire panel and in her closing argument, which reflects her proper understanding of the law on this issue. *Id.*

The court first cited the following portion of defense counsel's voir dire of the venire panel:

> Now the next thing I want to talk about is acting with another. And [the state] used the example of a robbery. You go in, one guy goes in, commits a robbery, comes back out, and the other guy drives away. Now, the important thing about that type of hypothetical is, the person in the car has to know the person going into the bank was going to commit a robbery.
>
> The instruction says they acted with a common purpose, or that they aided or encouraged for that common purpose of committing the crime. So say you get into your car, your friend calls you and says, Hey, look, let's go out. The friend gets in the car. They say, I need to go to the bank. I need to stop by and get some cash before we go out.
>
> You say, Fine, and you take them to the bank. The friend goes in, they come out, they've got cash. You drive and you go have your good time. And, later on, you find out the friend robbed the bank and shot the teller.

9

> Now, does everyone understand that the driver in that situation was not acting with—was not acting with a common [purpose], was not aiding or encouraging the friend to go in and rob the bank and shoot the teller. Does everyone understand that? Does everyone understand the difference between the two hypotheticals?
>
> I see shakings of the head.
>
> Does anybody not understand? Or think the person in the second hypothetical is just as guilty as the person in the first?
>
> I see no hands. So everybody understands that.
>
> Now, I anticipate you'll get another instruction. I'm just going to read it to you. The presence of a person at or near the scene of an offense at the time it was committed is alone not sufficient to make him responsible for the offense, although his presence may be considered together with all the evidence in determining his guilt or innocence.
>
> So what does that mean? Going along with our same hypothetical: Just because you drove the person there, you were at the bank, you were in the car, you were at the scene, is not alone sufficient enough to convict someone.
>
> Just because you're standing in line next to someone when you go to Schnucks, and you see them shoplift, just because you're standing there at the time, doesn't mean you're responsible for the person who shoplifted. Does everyone understand presence at the scene of a crime is not enough?
>
> Does anyone have a problem with that instruction? Can't follow that instruction?
>
> I see no hands.

*Id.* at 5-6 (quoting Respt's Ex. A at 130-32.)

The court next stated that the following excerpt from trial counsel's closing argument "hammered home the requirements for the State to convict a defendant on a theory of accomplice liability":

> The State has to prove to you beyond a reasonable doubt that [Petitioner] knew these robberies were going to occur. That that was the purpose of them driving around that night. That he in some way aided or encouraged the actions of Carlos Jackson. That's what is required. That is what the law states. It's not what the snitch or the guy who's getting a great deal says is, [m]y interpretation of what happened.

10

> What is the evidence? You have to be firmly convinced of every single word on all of those instructions that you're going to get. Not some of them, not partially convinced, well, you know maybe if we interpret it this way, we'd get to this result. It's grimly convinced. That's a very high burden.
>
> You have to believe that [Petitioner] had these conversations with his brother and Eric Benford, and they all knew they were going to go out and commit robberies. That he was going to drive around the corner and come back and pick them up.
>
> ***
>
> [Petitioner] may not be a model citizen. He may have family members who are pretty much worthless who deserve to go to prison for what they did, but just because he was driving around a brother who was a piece of crap, does not make him guilty of these robberies and assaults.
>
> He never intended for robberies to occur. He didn't plan these robberies. He didn't talk about these robberies. He didn't aid or encourage Eric Benford and Carlos Jackson to commit these crimes. He was as surprised as the victims. When he heard about these, he was angry, he felt betrayed. Betrayed.
>
> If you're in on this, and you know there's a gun, you're not surprised. You don't scream at your brother basically to get the f[ ] out of your life. How could you do this to me? Those are not the actions of someone who this was their grand plan to go around robbing people that night.

(Respt's Ex. I at 6) (quoting Respt's Ex. A at 358-59, 361-62.)

The court found that trial counsel "knew and understood the law on accomplice liability at the time of trial, as reflected in her closing argument to the jury and in her questioning during voir dire." (Respt's Ex. I at 7.) The court further stated that Johnson was present in the courtroom during these explanations of accomplice liability. *Id.* The court concluded that the "motion court could reasonably infer that trial counsel knew the law prior to trial, and properly informed [Petitioner] of the law on accomplice liability." *Id.*

Under Missouri law, it is necessary to show that "before or during the commission of the offense," the defendant "intentionally or knowingly aid[ed] or encourage[d] the commission of a crime." *State v. Parsons*, 152 S.W.3d 898, 902 (Mo. Ct. App. 2005).

The decision of the state court was not contrary to or an unreasonable application of clearly established law. The court reasonably found that counsel's accurate discussion of the law on accomplice liability during voir dire and closing argument refuted Johnson's claim that she did not understand the law. The change in Johnson's testimony between statements provided to law enforcement, and his trial testimony demonstrates that Johnson understood accomplice liability prior to trial. In addition, at sentencing, Johnson made no allegations regarding any promises made by his trial counsel that he would win at trial, or advice to turn down a plea offer based on misinformation.

Accordingly, the undersigned recommends that Johnson's ground for relief be denied.

## V. Certificate of Appealability

To grant a certificate of appealability, a federal habeas court must find a substantial showing of the denial of a federal constitutional right. *See* 28 U.S.C. § 2253(c)(2); *Hunter v. Bowersox*, 172 F.3d 1016, 1020 (8th Cir. 1999). A substantial showing is established if the issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). In this case, Johnson has failed to make a substantial showing of the denial of a constitutional right. The undersigned is not persuaded that the issues raised in his Petition are debatable among reasonable jurists, that a court could resolve the issues differently, or that the issues deserve further proceedings.

Accordingly, the undersigned recommends that no Certificate of Appealability be issued.

## **RECOMMENDATION**

**IT IS HEREBY RECOMMENDED** that the Petition of Terrance Johnson for a Writ of Habeas Corpus under 28 U.S.C. § 2254 be **denied**.

**IT IS FURTHER RECOMMENDED** that no Certificate of Appealability be issued.

The parties are advised they have fourteen days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636 (b) (1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact.  *See Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990).


                                              s/Abbie Crites-Leoni_____
                                              ABBIE CRITES-LEONI
                                              UNITED STATES MAGISTRATE JUDGE

Dated this 10th day of January, 2017.